T. E. CALVERT ET AL. V. STATE OF NEBRASKA.

[FILED MAY 18, 1892.]

1. **Injunctions:** VALIDITY: RAILROADS: STREET RAILWAYS. A street railway company instituted an action to obtain an injunction against three railway companies, to restrain them from preventing the laying of track across such railways. One of the

Calvert v. State.

railway companies answered, in substance, that it had occupied the ground for more than twenty years; that it was a part of its yard, where trains were constantly being made up, and cars were continually passing and repassing at the point indicated; that the company had rights in the street; that the street railway company was not a valid corporation and had no right to lay its tracks through said yard, and that other and safer points of crossing were near at hand; that the construction of the street railway would cause great loss and injury to the railway company and be attended with danger to its employes, etc. *Held*, That an order of the district judge made at chambers, on disputed questions of fact, on an application for a temporary injunction, which in effect divested the railway company of the possession of its property and gave it to the street railway company, was void.

2. ————: TEMPORARY ORDER: OFFICE. A preliminary injunction is merely to preserve matters in *statu quo* until a hearing: It cannot divest rights nor transfer the possession without a trial.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*John H. Ames,* for plaintiffs in error :

The mandatory injunction and order or writ of assistance, as provisional remedies, are absolutely unknown to our system of jurisprudence. Even in the absence of statutory definition and limitation, neither of these writs or orders has hitherto been used by courts of equity except for the purpose of carrying into effect their final decrees. (*Farmers Ry. Co. v. Reno O. C. & P. R. Co.,* 53 Pa. St., 224 ; *Audenried v. R. Co.,* 68 Id., 370 ; *Gale v. Abbott,* 8 Jurist, N. S. [Eng.], 987 ; *Child v. Douglas,* 1 Kay [Eng.], 578 ; *Washington Uni. v. Green,* 1 Md. Ch., 97 ; *N. Y. Print & Dying Est. v. Fitch,* 1 Paige [N. Y.], 97 ; *Bosley v. Susquehanna Canal,* 3 Bland [Md. Ch.], 65 ; *Att'y Gen. v. R. Co.,* 2 Green Ch. [N. J.], 136 ; *Att'y Gen. v. Patterson,* 1 Stock. [N. J.], 624 ; *Locomotive & Mach. Wks. v. R. Co.,* 20 N. J. Eq., 379 ; 3 Dan. Ch. Pr. 1767 ; 1 Ves. Jr., 140 ; *Blakemore v. C. & N. Co.,* 1 Myl. & K. [Eng.], 154 ;

High, Inj., 15; *Bracken v. Preston*, 1 Wis., 584; Story, Eq. Pl., 374, 375.) Even a decree of a court of equity on final hearing which sought to do what was done by this order, would be void. (*Tawas v. R. Co.*, 44 Mich., 479; *Henderson v. Marcell*, 1 Kan., 137; *Moosic v. R. Co.* 13 Atl. Rep. [Pa.], 915.) Judge Norval had jurisdiction to grant the temporary injunction on the answer and counter-claim. (*Cox v. Tyler*, 6 Neb., 397.)

*F. J. Bush*, and *J. R. Webster*, *contra:*

The *locus quo* of the controversy was in actual use as a public street. A supreme judge of the state of Nebraska has no jurisdiction to issue an injunction in a cause pending in the district court, unless it be of that character of causes of which the supreme court has original jurisdiction. The order allowed by Judge Norval was not an injunction nor was it intended to be. The injunction was not violated. (Code, ch. 4, secs. 258, 260.)

MAXWELL, CH. J.

On the 20th of August, 1890, the North Lincoln Street Railway Company brought an action against the Chicago, Burlington & Quincy Railroad Company, the Fremont, Elkhorn & Missouri Valley Railway Company, and the Missouri Pacific Railway Company, the cause of action being set forth as follows:

"The plaintiff is a street railway corporation, duly organized and incorporated for building, constructing, owning and operating a street railway in the city of Lincoln and its vicinity. The defendants are railroad corporations, respectively operating and owning lines of railway entering the city of Lincoln or passing through the same. The plaintiff has from the city of Lincoln a franchise for the constructing of a railway on North Eleventh street, and other streets of the city of Lincoln, and desires to construct a line of street railway on Eleventh street from W street

to Y street, and has constructed and nearly ready for oper-
ation about four miles of street railway running from W
street north to Grandview addition in the city of Lincoln,
and desires to continue and connect its road to the central
part of the city of Lincoln at O and Twelfth streets, or in
that vicinity.    The plaintiff has purchased and is now
putting into place machinery for operating its railway by
electricity for its motor power, and for that purpose has
purchased motors and engines and all appurtenances for the
operation of its road by electricity and is in process of con-
structing its power house.    The road of the plaintiff will
be of great public utility for the residents north of the rail-
way tracks of the defendants in obtaining rapid transit from
the suburbs into the city of Lincoln.    The plaintiff has
already invested about $35,000, and is about to invest for
the completion of its railway the sum of $60,000 additional.
The defendant's roads cross Eleventh street and it is neces-
sary for the plaintiff to lay its track across the track of
the defendants, of which there are several tracks in that
vicinity.    But the plaintiff does not propose without the
advice and approval of the proper authorities to break or
disconnect the rails of the defendants, but the plaintiff pro-
poses to construct its road across the tracks of the defend-
ants by raising its rails at the point of the crossing about
one and one-half or two inches above the rails of the de-
fendants and to cut the plaintiff's rails so that the wheels of
the defendants cars can pass through the space in the
plaintiff's rails without in anywise impeding or hindering
its passage or safety.    But the defendants, colluding and
conspiring together to make the completion of the plaint-
iff's road greatly more expensive, and much delaying
the completion of the same, refuse the plaintiff permis-
sion to cross their tracks in the manner aforesaid, or
to permit the plaintiff to cross their tracks at grade
in any manner whatever; that the manner of the pro-
posed crossing is the same as is the crossing now used

by the Lincoln Rapid Transit Company, operating its said cars at said crossing by steam; that the manner in which the plaintiff proposes to cross the defendant's tracks is the same that the defendant, the Chicago, Burlington & Quincy Railroad Company, and the Fremont, Elkhorn & Missouri Valley Railway Company consented that the said Lincoln Rapid Transit Company might cross their tracks; and the manner in which the plaintiff proposes to cross the said railway tracks is in all things precisely the same as has been used and operated without any accident or danger for three years last past by the Lincoln Rapid Transit Company over the defendants' tracks. So that the safety of the manner of crossing proposed has been demonstrated by use. But the defendants insist that the plaintiff shall construct what is termed a viaduct or bridge of sufficient height so that the cars of the plaintiff shall pass over the trains and cars of the defendants with sufficient elevation to permit the highest car and engine to pass under such viaduct. But the plaintiff shows that to construct such viaduct it is necessary to make a long and steep grade to approach the same in order to give sufficient elevation, and that such grade will greatly and inordinately add to the expense of the operation of the plaintiff's road in procuring sufficient power to lift its trains at such height over the defendants' tracks; and, moreover, for such viaduct to be strong and durable and safe will be of very great expense, costing as much as four or five miles of street railroad way, and such viaduct, unless made wide enough to be used for a public roadway for the passage of teams and vehicles, will very greatly impede the highway, which is a thoroughfare of very considerable resort and much used by the people living within and north of the city of Lincoln for entrance into the city, and it is against the public interest that a viaduct, unless also to serve as a public road, should be constructed in Eleventh street. And the city of Lincoln has now no means available

whereby it can obtain money for the construction of a via-
duct of sufficient width to serve as a public road, or street,
as well as for the tracks and cars of the plaintiff; that the
only reason wherefore defendants refuse and conspire to
impede the plaintiff in making the entrance of its road
into the central part of the city at grade over the defend-
ants' tracks, is that the defendants pretend it will greatly
add to the danger of collisions, and that they will have to
maintain a watchman at said crossing, but in truth and in
fact, said street at the point where plaintiff desires to cross
is now an open public highway used constantly for the
passage of teams and vehicles, and at said crossing the de-
fendants keep constantly night and day, while teams are
passing, a watchman with signals to warn persons pass-
ing when trains are about to pass said crossing, so
that the expense of the defendants will not in any-
wise be increased, as they already maintain one or more
watchmen at said crossing and no additional watchman will
be rendered necessary ; that the manner in which it will
operate its cars by electricity is such that the cars are under
perfect control of the driver, who stands on the front plat-
form of the car while in motion, and by a mechanical ap-
pliance termed a switch, is enabled to stop instantly or even
reverse at full speed the motion of the car, so that the street
railway car as it will be equipped and operated, is more
manageable than any other vehicle which is wont to cross
the defendant's tracks, and can be instantly stopped or re-
versed upon signal so to do; that there is about to be held
in the city of Lincoln the annual state fair of the state of
Nebraska, which will convene in the city of Lincoln, a
great mass of people whose transportation through the city
of Lincoln and its suburbs speedily, pleasurably, and
cheaply is not only to the interest of the people who may
assemble, but is of great interest to the city of Lincoln
itself.   The plaintiff, if permitted to cross the defendants,
tracks, expect to have their road in operation at the time of

the state fair, and the same being the first electric street railway in the city of Lincoln will be a novelty which guests assembled will desire to see and avail themselves of for transportation. And the novelty of such street railway transportation will also cause, as plaintiff anticipates, a large amount of traffic upon its line, and be of great profit, which the plaintiff will wholly lose if it is delayed for even two or three days in doing the mechanical work in constructing said crossing. The plaintiff moreover shows that north of the city of Lincoln, at Grandview, the northern terminus of the plaintiff's line, there is located and about to be constructed an institution known as Worthington Military Academy, and many people about to visit the city of Lincoln are connected and affiliated with the society interested in the said institution of learning, and will desire to see its site and its surroundings, and they will be very greatly inconvenienced if the plaintiff is not permitted to complete its line for their accommodation; that it is willing to regard such grade crossing as it now proposes to make temporary, and in case an elevated viaduct is not constructed on Eleventh street, it is willing to unite with the defendants in the construction of any approved, suitable and safe crossing, as is provided shall be done by section 113 of chapter 16 of the Compiled Statutes of Nebraska, and is willing to pay its portion as in said section provided, of the costs and expenses of such crossings, upon all the tracks which its tracks shall intersect; that the proposed point of crossing is the only favorable point of crossing that its road is constructing from Grandview up Twelfth street to the vicinity of defendants' tracks and grounds, but that Twelfth street does not extend across defendants' tracks and ground and is not open, so that the nearest and in fact the only point which plaintiff can cross is by diversion to Eleventh street next west of Twelfth street and making the crossing at that point, and plaintiff has proposed and tendered to defendants, that if they would permit plaintiff to make the crossing at that

point, and to make a viaduct or crossing above their grounds and tracks on Twelfth street, the plaintiff and others interested in obtaining an opening of the highway on Twelfth street line would, at their own expense, construct a high viaduct, but the defendants have refused the plaintiff's permission so to do, and it is unable therefore to make a crossing at that point, although a viaduct could be constructed on Twelfth street with much less expense than at Eleventh street, for the reason that the Twelfth street approaches to the grounds of the defendants from the south to the viaduct, would be short and without any steep or severe grade, and to the northward the access to such viaduct is easy by a direct line from Twelfth street north of their said tracks and grounds, but such viaduct would be more difficult and more expensive and less commodious at Eleventh street, because the south line of Y street is but about 150 feet from the northermost of defendant's tracks, and plaintiff would be compelled to construct and operate a curve at Twelfth and Y streets and at Eleventh and Y streets, so that the approaches to the viaduct will be much more difficult and the grade necessarily more severe, yet the defendants have refused to permit the company constructing the viaduct on the line of Twelfth street, and the negotiation has been pending for the past several months, and so much time has now elapsed that should the defendants consent to the making of the viaduct at Twelfth street, there would not now be sufficient time before the holding of the state fair; that it is unable to enter Eleventh street at the said point because defendants refuse permission and threaten to use force against plaintiff's laborers and prevent their constructing said crossing, although they have under their franchise a perfect right so to do, and unless restrained by the order of the court, the defendants will by violence and force prevent the construction of said crossing, and plaintiff has no remedy except by the intervention of the court.    Wherefore plaintiff prays that a writ of injunction may be issued

against the defendants, and all their several officers and employes be each and severally restrained from any force or violence against plaintiff's laborers and in anywise impede or hinder the plaintiff in making its crossing as in the same manner they have permitted the said street railway, to-wit, the Lincoln Rapid Transit Railway Company, to construct its tracks across the Chicago, Burlington & Quincy Railroad Company on Eleventh street, and that on the final hearing of said injunction may be made perpetual and for such other, further, or different relief as the plaintiff ought in equity to have, and for costs."

On the 21st of that month application was made to Judge Field for a temporary order of injunction and the hearing thereon was continued to the following Monday. On the 22d of the month the Missouri Pacific Railway Company filed an answer to the petition and praying for affirmative relief. On the 22d of the same month the Chicago, Burlington & Quincy Railroad filed an answer and praying for affirmative relief as follows:

"Now comes the defendant, the Chicago, Burlington & Quincy Railroad Company, and answering for itself alone and by way of a cross-petition says that it is a corporation organized and operating a system of railroads in Nebraska in pursuance of law, and that as such it owns and operates different lines of road running into the city of Lincoln, one main line and several side tracks, on which the plaintiff is seeking to cross by a line of railway to be operated into and out of the city of Lincoln at or near what would be a continuation of Eleventh street in said city. This defendant says in answer to said petition filed by the plaintiff that whether the plaintiff is a corporation organized as alleged this defendant has not knowledge or information, and therefore denies the same; that whether said plaintiff has a franchise and right from the city of Lincoln to construct its line of road over and along said street or any portion thereof, this defendant has not knowledge or in-

formation and therefore denies the same.   Admits that the plaintiff proposes to cross its right of way and railroad tracks and is making arrangements to build a crossing over the same for the plaintiff's line of road, but denies that this defendant has conspired or colluded with other defendants or any one else to prevent said crossing, denies the right of said plaintiff to cross its tracks and objects to the same on its own account without any conspiracy or collusion with anybody else.   Says that negotiations have been had with this defendant and the plaintiff by and through its officers for the construction of a viaduct over the tracks of this defendant at Twelfth street and Eleventh street, and this defendant had voluntarily offered to assist the plaintiff and the city of Lincoln in the construction of such viaduct either at Twelfth street or on a continuation of Eleventh street over the defendant's tracks as might be decided upon by the city and the plaintiff, and has accepted the proposition of the plaintiff specifying the amount that should be paid by this defendant.   This defendant admits that a state fair is soon to be held near the city of Lincoln, but alleges that the plaintiff's road does not run in the direction of the fair grounds, nor anywhere near them.   Denies that the point selected by the plaintiff to cross its track is the only available place for crossing the same.   Denies specifically and generally each and every allegation contained in said petition not hereinbefore admitted or stated.

"Further answering the said petition, and by way of asking for affirmative relief, this defendant says that it owns a strip of ground at the proposed place of crossing 200 feet wide for right of way for the main line tracks and yardage, for the purpose of carrying on its business at the city of Lincoln, and that it has owned and used said ground for such purpose for about twenty years; that it became the owner of said strip of ground and adapted it to the uses required long prior to the time that Eleventh street was established by the city up to the line of the

43

ground, and neither the city of Lincoln nor the county of Lancaster have ever established or obtained the right to maintain and use any portion of said strip of ground as a street or public highway. This defendant says that in the use of said strip of ground for its road, side tracks, and switch yards for the transaction of its business at the city of Lincoln, it has laid thereon a number of tracks; that other defendant railroad companies have also obtained land, and right of way adjacent to that of this defendant at said point, and that all of the roads, together have located and used (the tracks by being close to each other) the number of ten tracks, which would have to be crossed by the plaintiff in crossing said grounds at the point proposed; that there is a large warehouse building adjacent to defendant's tracks on the west side, built at large expense, by private owners, the tracks adjacent were built and adapted for the purpose of shipping and the handling of freight, so as to be convenient, both for the warehouse people and for this defendant; that in said construction the side tracks reaching thereto are at a certain grade, and that if the proposed crossing is made by the plaintiff the side tracks reaching to this warehouse would have to be raised some two feet in height, which would make a great expense to this defendant, and practically render useless the said warehouse and tracks for the purpose of shipments as designed; that the said plaintiff has never obtained the right to cross this defendant's grounds and tracks at the point proposed, nor ever asked permission to cross the same at grade until just prior to the bringing of this action for an injunction by the plaintiff, and then simply inquired if defendant would consider question of grade crossing; that it is wholly impracticable and extremely dangerous for the plaintiff to cross the defendant's tracks and the other tracks at the point proposed at grade; if done, the result would necessarily be, according to all experiences in said cases, the loss of many lives, and a constant danger to the

traveling public, and would be a great and irreparable damage and injury to this defendant; that the defendant constantly uses said ground and tracks for the passage of its trains on its main lines and for switching purposes, and uses the same as a switching yard for the station at Lincoln at which point many different lines converge, all operated by this same defendant, where there is a vast amount of switching and moving of trains constantly on its grounds and yards, including this particular point where the plaintiff proposes to cross; that in corroboration of what the plaintiff states there is a large amount of traveling back and forth from North Lincoln to the city proper, which makes it all the more imperative to provide such means of crossing, specially over the yardage and tracks of this defendant and other defendants, that will be safe and a reasonable protection to life and limb to the traveling public; that the plaintiff and all of the parties connected therewith have recognized the necessity of building a viaduct or overhead crossing for their line of road over these numerous tracks as being the only safe and practicable mode of operating their cars; that members of the city council and the plaintiff have repeatedly represented this to the defendants and have solicited its aid in the construction of said viaduct; that this defendant readily recognized the same necessity as did the plaintiff and the city council of Lincoln, and believing it was proper for the defendants to aid in such a work as a voluntary contribution, readily consented to pay the amount that the plaintiff and the city council demanded and thought proper by this defendant, and when the plaintiff and the members of the city council named the amount that this defendant ought to pay for such construction, this defendant accepted the proposition as made, and had no idea that the plaintiff would attempt to cross its tracks and yardage at grade until the beginning of this suit; that the viaduct or railroad crossing that was contemplated and talked of was to be for teams and

wagons as well as for plaintiff's line of railway, and says that it is wholly practicable to build such a viaduct, either at a continuation of Eleventh street or Twelfth street over the tracks of this and the other defendants, at a small outlay compared with the damage it would occasion by making a grade crossing; that it owns its property and has a right to its use, and it cannot be taken or damaged by any other railroad line, person, or company without just compensation; that no such compensation has ever been made, agreed upon, or provided for, as mentioned in the statute referred to in the plaintiff's petition or otherwise; that the plaintiff has built its line of railway near to the defendant's right of way and grounds and tracks at the proposed point of crossing, and has piled up a large amount of material and has engaged a large number of men to enter upon the grounds of this defendant's tracks to build and construct its line of road across the tracks and grounds of this defendant; that these men thus employed by the plaintiff, and the plaintiff itself, will, unless restrained, enter upon said grounds and build said crossing; that it has threatened to do so, and have these men ready and on or adjacent to the ground for that purpose, and this defendant has been compelled to watch the grounds in order to see that the plaintiff does not carry out its threat until the court shall decide the question involved in this litigation, and as the plaintiff is the moving party and the one that is threatening to build said crossing, and has the men and material ready for that purpose, this defendant prays that the court may issue a temporary order of injunction enjoining said plaintiff, its agents, employes, and servants, and all others acting under, by, or for the plaintiff from entering upon the grounds of this defendant at the proposed point of crossing or elsewhere, for the purpose of building or grading for the crossing proposed, or for any other crossing, and that such further order may be made by this court sitting at chambers on

Monday, the 25th day of August, 1890, as may be just, and that on the final hearing of this case said order of injunction may be made perpetual, together with such other and further relief as justice and equity may require."

Upon this answer Judge Norval granted an order as follows: "Upon reading the foregoing answer duly verified, and believing that a good cause is shown, it is ordered that a temporary injunction be granted herein, enjoining the plaintiff as prayed for, from entering upon the defendant's right of way and grounds for the building and construction of the crossing of the same as complained of, and that a further hearing of this matter is set for Monday, the 25th day of August, 1890, at the office of Judge A. W. Field, in Lincoln, at 10 o'clock A. M. This temporary injunction to be issued upon defendant's executing and delivering to the clerk of the court an undertaking to the plaintiff in the sum of $1,000, with approved securities, conditioned as required by law. August 22, 1890." This was signed by Judge Norval.

It will be observed that the only object of this order was to prevent any action by the plaintiff until a hearing could be had on the following Monday. Objection is made in the brief of the defendants in error to the power of the judge of the supreme court to grant a temporary injunction. The statute plainly confers the power. Heretofore, however, the judges have refused to grant such orders as there is some doubt as to the right under our present constitution. The question does not arise in this case, because on Monday, the 25th inst., Judge Field continued the restraining order in full force and deferred the hearing until the next day, when the following order was entered by Judge Field:

"This cause now comes on for hearing upon the application of the plaintiff for a temporary order of injunction herein, the application of the defendant, the Chicago, Burlington & Quincy Railroad Company, for a temporary

injunction. * * * It is further ordered by me that upon consideration of the application of the defendant, the Chicago, Burlington & Quincy Railroad Company, for a temporary injunction against the plaintiff, that the same be, and is hereby, denied, and that the restraining order heretofore issued against the plaintiff and hearing set before me, by his honor T. L. Norval, one of the judges of the supreme court, be and the same hereby is vacated and discharged, to which ruling the said defendant, the Chicago, Burlington & Quincy Railroad Company, duly excepts and demands that the amount of a *supersedeas* bond be fixed by which the restraining order heretofore allowed by the said, the honorable T. L. Norval, may be continued in force until a review of the action of the judge herein in vacating said restraining order can be heard, and make tender of a bond, which demand of the said defendant is by me refused, and to which refusal the said defendant duly excepts.

"Done at my chambers at the court house in the city of Lincoln, Lancaster county, Nebraska, this 26th day of August, A. D. 1890."

Afterwards an information was filed charging the plaintiffs in error with contempt in violating said order and they were found guilty and each sentenced to pay a fine and to be imprisoned until paid. From which judgment the case is brought into this court.

The question presented to this court is the power of a judge at chambers, upon the issues presented, there being disputed questions of fact, to make the order in question. In any case where the court or judge has jurisdiction and grants an injunction during the pendency of a suit, the injunction while in force must be obeyed. A court should exercise great care in granting such relief, and only where it is clear the injury to the plaintiff will be great or irreparable; but having granted it the adverse party should move to dissolve or modify and cannot disregard it with

impunity.   A court must insist that its legitimate orders be obeyed.   This is necessary both for the protection of private rights and those of the public.   If the court or judge exceeds his jurisdiction, however, his action in the premises is like that of any other person who acts without authority.   The sum of the answer of the Chicago, Burlington & Quincy railroad is that for over twenty years it had been in possession of this property; that it was within the limits of its yard at Lincoln and necessary for the transaction of its business; that the plaintiff's railway was not a lawful corporation and had no right to use the property in question for its track; that the location and use of said street railway would cause great injury and danger to the company and its employes; that the plaintiff had paid nothing for the right to use said street, etc.   These facts stand admitted, yet the plaintiff was given full authority to proceed and construct the street railway while the defendant was enjoined from defending its possession.   Not only this but the whole power of the court was used to aid the plaintiff.   Suppose the owner of a farm, or one or more city lots, should apply for an injunction to restrain the construction of a railway across his land, and should set forth the same facts as to his ownership and possession as the defendant has done in this case, and the railway company should allege the same facts as are stated in the plaintiff's petition, would the court or judge on a preliminary hearing have authority to tie the hands of the land owner and permit the adverse party to divest him of his rights and destroy his possession?   The statement of the case carries with it a full answer.   The judge, in effect, has undertaken to dispose of the merits of the case without a hearing.   A temporary injunction merely prevents action until a hearing can be had.   If it goes further, and divests a party of his possession or rights in the property, it is simply void. (*People v. Simonson*, 10 Mich., 335; *P., H. & G. Ry. Co. v. Judge*, 31 Id., 456; *Salling v. Johnson*, 25

Id., 489; *McCombs v. Merryhew*, 40 Id., 725; *Arnold v. Bright*, 41 Id., 207; *T. & B. C. R. Co. v. Judge*, 7 N. W. Rep., 199.) Judge Cooley, in *Arnold v. Bright, supra*, says: " The court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property *prima facie* his, and hand over its enjoyment to another on an *ex parte* claim to it. In several cases it has been decided that possession of lands is not to be disturbed by means of a preliminary injunction. (*Hemingway v. Preston*, Walk. Ch. [Mich.], 528; *People v. Simonson*, 10 Mich., 335.)"

In the latter case it was held that such an order was not simply illegal but absolutely void. The railway corporation has been in possession of the yard for more than twenty years; it is necessary to the making up of its trains. It is proposed to run a street railway across the same with a network of wires overhead charged with electricity, and a source of danger to every employe on the tops of its cars —such as brakemen. Whether the right exists to construct such a track across a network of railway tracks, where trains are being constantly made up, we do not decide, because the question is not presented, but it is apparent that the question is not entirely free from doubt, especially where there are other available outlets. Even if it is conceded that Eleventh street at the point indicated across the railway tracks is a public street, still it does not follow as a matter of course that a street railway can be constructed at that point without compensation to the company whose tracks are obstructed. Street railways are desirable improvements and furnish facilities for the transportation of passengers within the limits of a city, but the fact that they are a convenience—almost a necessity at the present time—does not exempt them from liability for special damages sustained by the property of any person by reason of their construction. Whether or not the railway company is entitled to damages in this case is a matter yet to be determined from the evidence, but the possibility

or rather probability of such damages being recovered should deter a court or judge from depriving a party of any rights until the damages were either tendered or paid. This is the rule substantially when a right of way is condemned, and is based on the principle that a party being deprived of his property the compensation therefor takes its place. It is true in condemnation cases where the money is deposited the party condemning the property may proceed, and no doubt the rule would prevail here. In our view there is a material difference between a case of this kind and one where a public street of a city has been appropriated in part by a railway company, but has been in constant use by the public as a thoroughfare. In such case the rights of the respective parties are to be respected and protected. But a street railway imposes an additional burden upon the street, and particularly is such the case where the cars are propelled by a dangerous agency like electricity, transmitted through wires and liable to cause the death or serious injury of such employes of the railway company, as, from the necessity of the case, are brought near or in contact with such wires. The question of the street railway's right to appropriate the property in question should have been determined by a trial before the order in question was made, and as it was not, the judge acted without authority and the order is void. The plaintiffs in error, therefore, were not guilty of contempt. The judgment of the judge is reversed and the proceedings for contempt

DISMISSED.

THE other judges concur.