The Minneapolis and St. Louis Railroad Company, Appellant, v. The Chicago, Milwaukee and St. Paul Railroad Company, Appellee.

Condemnation by Railroads: WHAT IS COMMENCEMENT OF: *Prior rights against other railroad.* Under Code, section 1995, authorizing a railroad company to condemn land "for the location, construction and convenient use of its railway," no prior location or survey is necessary, and, if made, is not the commencement of condemnation proceedings, so as to give a prior right as against another company.

*Crossing tract condemned by other railroad.* A railroad company may cross a right of way condemned by another company.

RIGHTS OF RAILROAD IN POSSESSION UNDER CONVEYANCE: *Condemnation by other railroad.* A railroad company which has purchased land for right of way, and is in possession, is not affected by condemnation proceedings against the grantor by another company.

*Condemnation or puchase.* A railroad company acquires land by purchase, and not by condemnation, where it takes a deed therefor before the award is made and paid.

JURISDICTION: *Disagreement and refusal.* The owner of land not having refused to make a deed, and there being no disagreement as to the compensation, proceedings by a railroad company to condemn, are without jurisdiction.

Deeds: CONSIDERATION: *Subsequent purchasers.* A deed is not void as against a subsequent deed to another party because consideration had not been paid, the grantor having delivered it, intending that it should become operative, and consented to delivery on guaranty of a third person that he would see the price was paid.

RECITAL OF CONSIDERATION: _Not evidence against subsequent purchaser._ Mere expressions of consideration in a deed is not sufficient evidence of payment of consideration to support it as against a prior deed to another.

QUITCLAIMS Prior deeds. A quitclaim deed is no protection as against a prior deed.

Mandatory Injunctions: A mandatory temporary injunction transferring possession of property is improper.

Temporary Injunctions: STOPPING BUILDING OF RAILROAD: Notice essential. Temporary injunction to stop a railroad company from proceeding with its work of building a road or operating the part already constructed, being granted without the notice provided by Code, section 4359, is properly dissolved.

Appeal from Hamilton District Court—Hon. W. B. QUARTON and S. M. WEAVER, Judges.

MONDAY, FEBRUARY 3, 1902.

SUIT in equity to enjoin defendant from crossing plaintiff's right of way and depot grounds in the town of Storm Lake. A temporary writ was granted by Judge Helsell without notice, and on defendant's motion Judge Quarton dissolved the writ. The case was thereafter tried on its merits before Judge Weaver, and a decree entered dismissing plaintiff's petition. From the order dissolving the temporary writ and the decree on the merits, plaintiff appeals.—_Affirmed._

Albert E. Clarke and R. M. Wright for appellant.

J. C. Cook for appellee.

DEEMER, J.—I. These parties are each railway companies. In the spring of the year 1899 they had each determined to extend their respective lines into the town of Storm Lake—plaintiff from the north or northeast, and defendant from the south or southwest. Plaintiff first surveyed and staked out its line through the town. Thereafter defendant staked out a line, which will be hereinafter referred to, that

crossed plaintiff's line at a point where the station grounds
were to be located. A committee selected by the citizens of
the town, who were anxious to have both roads constructed,
and so built that one would not interfere with the other,
requested plaintiff to change the location of its line so that
defendant might more advantageously locate its station and
depot grounds. Pursuant to this request, plaintiff, on Feb-
ruary 27, 1899, caused a second survey to be made, and sub-
sequently, on March 17th, caused a third one to be run, which
was parallel to, and 300 feet west of, the second survey. It
is claimed that plaintiff's right of way and depot grounds
were selected along the lines of this third survey by its gen-
eral manager and chief engineer on March 4, 1899, and that
the subsequent survey was in accord with this selection. On
March 4th, the citizens' committee to which we have referred
was notified that plaintiff would require for its station
grounds a tract of land 300 feet wide extending to a point
beyond the northern limits of the town. On March 31st the
said committee made a proposition to furnish practically all
the ground required for the consideration of $22,000. Plain-
tiff accepted the proposition on the day it was made, and on
April 14th paid $10,000 of the consideration. None of the
preliminary surveys made by plaintiff were actually adopted,
but the line on which the road was constructed was staked out
April 6, 1899. It ran alongside of the one surveyed March
17th, and the track was about fifty feet from the preliminary
survey. As we understand it, the lines of the station
grounds were not changed after March 17th. On April 14th
an agent of the defendant company came to Storm Lake, and
had a conference with the citizens' committee with reference
to the location of its line of road. This agent explained
to the committee just what he wanted, and it happened by de-
sign or accident that he wanted part of the same ground
which the committee had agreed to procure for the plaintiff.
Nothing was said at this first meeting about that matter, how-
ever. There is a controversy about what was said thereafter,

but we think the evidence fairly shows that defendant was informed regarding the surveys made for plaintiff's line and depot grounds. One Metcalf was the owner of part of the land on which plaintiff's depot and station grounds were located, but he had given the citizens' committee no authority to make contracts for the sale of his property, nor conferred upon them any right to contract on his behalf with either of the railway companies. On April 15th defendant's right of way agent went to Metcalf, and took an option from him for the purchase of a strip of land 200 feet wide for defendant's station grounds, and 100 feet wide for its right of way, crossing the grounds theretofore surveyed by plaintiff for its depot and station grounds. On April 17th an arrangement was made whereby Metcalf and wife conveyed this strip of land to the defendant, but the deed was deposited in escrow in a bank at Storm Lake. Later in the day, however, the deed was actually delivered to the agent of the defendant company, and Brown, who theretofore had held possession thereof, as agent for the bank, agreed to be responsible for the consideration, towit, $2,000. This deed was filed for record April 25, 1899, but the consideration was not paid when the preliminary injunction was issued by Judge Helsell. On April 19th defendant commenced grading across the ground staked out by the plaintiff as its station grounds, and in three days had established a grade about 1,400 feet in length on which a track was laid. This track was not connected with any other at the time this action was commenced, and it may be taken for granted, we think, that this grading and track laying was for the purpose of securing some advantage over the plaintiff. On April 20th plaintiff instituted proceedings to condemn a strip 100 feet wide along the line finally staked out by it, and over and across the Metcalf lands, part of which had theretofore been secured by defendant as before stated. The papers filed in these proceedings describe the land occupied by defendant and claimed by it as its right of way at the point of intersection.

Notice of the appraisement of damage was served on Metcalf alone. At that time the records showed the legal title to the property to be in Metcalf, and plaintiff insists that it had no notice, either actual or constructive, of the option or of the deed made by Metcalf to the defendant. May 3d the commissioners made their award, and on May 9th plaintiff paid the amount of the award to the sheriff, which, on May 20th, was accepted by Metcalf, although he had theretofore conveyed the land to the plaintiff, as will hereafter appear. May 22d, the proceedings in condemnation were duly recorded as provided by law. On April 21st, Metcalf sold plaintiff that part of his premises on which defendant's track was built, the deed expressing a consideration of $500. This deed was filed for record April 22d, and on April 21st Metcalf and wife conveyed by quitclaim deed the land theretofore conveyed to defendant for the expressed consideration of $2,000. This deed was also filed for record April 22d. Plaintiff claims that it acquired these deeds in good faith, and without notice or knowledge of the conveyance to the defendant. After defendant recorded its deed, plaintiff commenced condemnation proceedings against it, and secured an award, which was deposited with the sheriff; but defendant insists that this award is invalid because of insufficiency of the service of notice. Thereafter, and on October 6th, plaintiff instituted another condemnation proceeding against defendant. At defendant's instance an injunction was issued restraining these proceedings, but, as the notice thereof did not reach the sheriff in time, an award was made, and the amount thereof deposited with the sheriff. July 19, 1899, plaintiff, on application to Judge Helsell, secured a temporary writ of injunction restraining defendant from constructing its line over plaintiff's station grounds, from continuing or maintaining any railroad grade thereon, from interfering with plaintiff in the exclusive use and occupancy thereof, and from establishing a grade crossing on the property. This writ, as will be noticed, was man-

datory in character, and was issued without notice to the defendant. The petition on which it was granted was filed July 20th, and it asked that the injunction be made permanent, that plaintiff be adjudged to have priority of right to the right of way and station grounds theretofore staked out by it, and that defendant's rights be adjudged inferior to those of plaintiff, and subject to all duties imposed by law where one railway crosses another. The temporary writ was dissolved by Judge Quarton on defendant's motion, and plaintiff appealed. This appeal was ordered submitted with the appeal in the main case, but, as it presents some questions foreign to those raised on the appeal in the main case, it will first be disposed of.

As defendant's grade and track were established and laid when the action was commenced, and as defendant was in the actual possession of the property, the injunction was mandatory in character, and had the effect of transferring the possession of the property from defendant to the plaintiff. That this is not the office of a temporary writ is well established, and it follows that the injunction was improvidently granted, and should have been dissolved. The authorities seem to be almost unanimous on this proposition. Beach, Injunctions, section 112; High, Injunctions (2d Ed.), section 601; *Farmers' R. Co. v. Reno, O. C. & P. Ry. Co.,* 53 Pa. 224; *Calvert v. State,* 34 Neb. 616 (52 N. W. Rep. 687); *Arnold v. Bright,* 41 Mich. 207 (2 N. W. Rep. 16). Moreover, if the action was simply to stop defendant from proceeding with its work of building the road, or its operation of the part already constructed, it should not have been issued without notice. Code, section 4359. The action of the court may also be sustained on the theory that no great or irreparable injury to plaintiff's property was threatened. *Dubuque & S. C. Ry. Co. v. Cedar Falls & M. Ry. Co.,* 76 Iowa 702. The ruling on the motion to dissolve was clearly correct.

II. We come now to the main case, and need hardly say, in view of the preceding statement, that the case is one

where two rival companies are seeking to secure an advantage in the acquisition of their right of way and depot grounds. Plaintiff not only claims title and a prior right to the strip of ground selected for depot and station purposes agreed to be conveyed to it by the citizens' committee. but also to a right of way 100 feet wide, extending over the same ground, acquired through condemnation proceedings; while defendant insists that it acquired a prior right to the crossing over plaintiff's alleged right of way and depot grounds through its deed from Metcalf. At the time the transactions above recited transpired, a railway could not acquire by condemnation a strip to exceed 100 feet in width (Code, section 1995), and for this reason plaintiff attempted to purchase the land desired by it for a station and depot grounds. The citizens' committee with which it negotiated represented the people generally, but had no authority from the owners of the land over which plaintiff's line was surveyed—at least it had no authority from Metcalf. Plaintiff's surveys were not primarily for the purpose of condemnation, but to define the location and limits of the land it sought to acquire. As we shall hereafter show, plaintiff did not commence its condemnation proceedings until after defendant had acquired its option from Metcalf, and had actually entered upon and graded its line over the strip of ground in controversy. We have, then, to deal in the first instance with the contract rights of the parties. Defendant acquired its option from Metcalf on April 15th, secured the delivery of his deed on the seventeenth, and commenced work on the property April 19th. On April 21st Metcalf transferred the land claimed by the defendant for a crossing, and on the same day quitclaimed all that had previously been sold to the defendant, to the plaintiff. Defendant did not record its deed until April 25th, while plaintiff recorded its deeds on April 22d. Defendant's title seems prior in point of time, but plaintiff insists that the deed to

defendant was not delivered; that it was not paid for when delivered; that it was delivered without authority: that it was not recorded until the twenty-fifth, and not paid for until after May 9th; and that it purchased without notice of defendant's title. As the deed was actually delivered to the defendant, it could not be held in escrow. True, the consideration was not then paid, but Metcalf, the grantor, consented to the delivery on Brown's guaranty that he would see the price paid. There was no fraud in securing the delivery of the instrument, and nonpayment of the purchase price will not, under the circumstances, defeat it. *Gardner v. Early,* 72 Iowa, 522. Metcalf testified that he delivered the deed intending that it should become operative, and it certainly conveyed the title of the property to the defendant. Plaintiff says, however, that its subsequent purchase was for value, and without notice. There is no evidence to support this contention, aside from the consideration expressed in the deeds from Metcalf to plaintiff; and the deeds were not of bargain and sale, but quitclaims. The recitals in these deeds are not sufficient evidence of the payment of a consideration. *Sillyman v. King,* 36 Iowa, 207; *Gardner v. Early, supra; Nolan v. Grant,* 53 Iowa, 392. This alone would be a sufficient answer to plaintiff's claim under the contract; but, as it took a quitclaim deed, it is not protected in any event. *Steele v. Bank,* 79 Iowa, 347, and cases cited. Further than this, it is expressly admitted that when plaintiff took its quitclaim deed it had notice of the option and of the deed to the defendant company. Moreover, defendant was in the actual possession of the property when plaintiff received its deeds. Having now disposed of the contract rights of the parties, we turn to the condemnation proceedings.

III. As hitherto stated, we do not think any of the preliminary surveys were made for the purposes of condemnation. Plaintiff could not condemn the strip of ground

marked out, for it was wider than the law permitted to be taken through condemnation. We are convinced, after reading the record, that plaintiff was relying on its contract with the citizens' committee, until after it discovered that defendant had obtained an option and deed for the land. Discovering these facts it instituted its proceedings on April 20th against Metcalf, defendant's grantor. At that time defendant was in possession of the property, and had made some improvements thereon. Of course, defendant was not bound by these proceedings. After defendant's deed was recorded, plaintiff, on May 3d, commenced further proceedings against defendant, but the notice was not served on any agent of the defendant, as we understand it. Plaintiff contends that these proceedings relate back to the time the preliminary survey was made, or to the time when plaintiff selected the line for its right of way. It will not be seriously contended, we think, that the mere determination of the general manager or president of a railway to build its line over a particular tract of ground is the commencement of condemnation proceedings. The most that can be claimed is that this determination, followed by an actual survey and staking out of the route selected, is a sufficient appropriation of the land to give plaintiff a prior right thereto. There is really no need to consider this proposition, for we are firmly convinced that this survey was not preliminary to condemnation proceedings, but was had for the purpose of indicating the land plaintiff desired to acquire for depot and station purposes. As already stated, the condemnation proceedings to acquire a right of way 100 feet in width were not begun until after defendant had obtained its deed and entered into the possession of the land. In many states the staking out and surveying of a line of road is held to be the beginning of condemnation proceedings, and, if followed up, give prior title or right to the line so located over purchasers with notice. *Contra Costa C. M. Company v. Moss,* 23 Cal. 324; *Morris &*

*Essex Railroad Co. v. Blair,* 9 N. J. Eq. 635; *Barre R. Co. v. Montpelier & W. R. R. Co.,* 61 Vt. 1 (17 Atl. Rep. 923, 4 L. R. A. 785, 15 Am. St. Rep. 877); (39 Am. & Eng. R Cases, 17) *Williamsport & N. B. R. Co. v. Philadelphia & E. R. Co.,* 141 Pa. 407 (21 Atl. Rep. 445, 12 L. R. A. 220). Despite what is said by counsel of *Chicago, R. I. & P. Ry. Co. v. Grinnell,* 51 Iowa, 482, we are of opinion that the question has never heretofore been presented to this court. That case involved the construction of a land grant by congress, and has no reference whatever to condemnation proceedings. Judge Shiras, of the federal court, had occasion to consider the point in some of its phases, as will be seen by reference to *Sioux City & D. M. R. Co. v. Chicago, M. & St. P. R. Co.,* (C. C. 27 Fed. Rep. 771). But in that case the party claiming under the condemnation proceedings had filed its application with the sheriff at the time the other party acquired title by purchase. If the statute does not provide for nor require a survey or location, nor require a map or survey to be recorded, that company which first commences condemnation proceedings will have priority of right to appropriate the land Mills, Eminent Domain, section 306; 3 Elliott, Railroads, p. 1277; 2 Lewis, Eminent Domain (2d Ed.), p. 753, and cases cited. In this state no location or survey is necessary; nor does the statute require the filing of any map or survey. If this, then, be the rule,—as we are inclined to think it is,—defendant acquired its rights by purchase before plaintiff commenced its condemnation proceedings. The statute to which we have referred authorizes railway companies to condemn land "for the location, construction, and convenient use of its road." This language is significant. The condemnation is for the "location of the road," etc. Until condemnation is had, or at least commenced, the railway company is a trespasser when it enters on the land of the owner. Surely, an unauthorized trespass will not give it a prior right to the

land. Aside from this, however, the controversy is over a crossing, and not over the entire strip used or claimed by either party. If by condemnation plaintiff acquired a prior right to but 100 feet of ground for its right of way, defendant had the right to cross this strip, unless in so doing it materially interfered with the use of the strip and the operation of trains thereon. *Chicago, M. & St. P. Railway Co. v. Starkweather,* 97 Iowa, 159. This would be true even if plaintiff had acquired a sufficient strip for depot purposes. But that it did not do, for it could not acquire a strip exceeding 100 feet in width, The case, in this aspect, is no different then from the ordinary one where one railway is seeking to cross the line of another. That being true, plaintiff had no right to the relief sought in this action. Had plaintiff actually constructed its line,—which it had not at the time when defendant took possession,—and thrown up its grade, defendant would have had the right under the law to cross it. The question then would be one of damages, and various other matters which arise in such cases, rather than of priority of right. The questions which arise regarding the manner of crossing, etc., are not involved on this appeal. We may say, however, that priority of construction has much to do with the manner of crossing and the respective rights of the parties with reference thereto. *St. Louis, I. M. & S. Ry. v. Peach Orchard & G. R. Co.,* 42 Ark. 249; Lewis, Eminent Domain (Last Ed.), p. 757. It must constantly be borne in mind that under no possible theory of the case did plaintiff obtain title to more than a strip 100 feet in width when defendant obtained its title through purchase; hence the question of depot grounds is not in the case, when viewed from the standpoint of right under the condemnation proceedings. Treating the case as one where defendant has simply crossed a surveyed line of road, and granting that the survey gave a prior right of occupancy, it does not follow that defendant is not entitled to cross it, or that any

damage results if it does so.    Indeed, plaintiff does not contend, as we understand it, that any damage resulted from crossing the surveyed line, which could not exceed, when fully appropriated, more than 100 feet in width. See Code, sections 2020, 2063.  We are of opinion, however, that when defendant obtained its deed from Metcalf plaintiff had not acquired a right of way or such a claim thereto as would inhibit defendant from crossing the same.    Indeed, we are constrained to hold that it did not commence its condemnation proceedings until after defendant had obtained title.  All that preceded was with reference to the purchase of the land, and defendant, by its diligence, obtained a superior title to the strip in dispute.

With reference to the condemnation proceedings actually instituted against Metcalf and the defendant, a few words may not be out of place, although what we have said seems to dispose of the main points in the case.   From the foregoing it will be observed that plaintiff finally obtained title by deed from Metcalf, and virtually abandoned its proceedings against him.   The award was made after plaintiff had obtained title to the land by deed.   The title was manifestly acquired either by deed or by condemnation,—not by both,—and, as it took its deed before the award was made and paid, it must be held to have acquired its title, in so far as Metcalf is concerned, by deed.   Aside from this, however, there was no refusal on the part of Metcalf to make a deed, and no disagreement as to compensation to be paid; hence the proceedings were without jurisdiction.   *Council Bluffs & St. L. Ry. Co. v. Bentley,* 62 Iowa, 446.   That case seems to effectually dispose of the Metcalf condemnation proceedings.   The proceedings against the defendant need not be considered, although it may be stated that they seem to have been without jurisdiction for want of notice.   That question we do not care to definitely pronounce upon, how-

ever, at this time, and simply refer to it in order that it may not appear to have been overlooked.

Something is said about a highway at the point of crossing. That question is not regarded as material in view of what precedes.

We have now disposed of all the claims made in the case, except that of bad faith. The evidence, as we have said, discloses the usual race for priority, and perhaps some little juggling with truth; but the record is not such as to justify us in holding that from this alone plaintiff's rights should be held superior to those of defendant.

We are satisfied with the conclusion reached by the trial court, and the cases are on both appeals AFFIRMED.