## BARTON et al. v. THARP.

### No. 3855.

Court of Civil Appeals of Texas. Texarkana.
April 16, 1930.

Rehearing Denied April 24, 1930.

Carpenter & Harris, of Greenville, and W. W. Berzett, of Emory, for appellants.

H. D. Garrett, of Emory, for appellee.

HODGES, J.

At the time this controversy arose and prior thereto, the appellee, Tharp, was the owner of a farm situated in Rains county occupied by Barton and wife as tenants during the

year 1929. Some time prior to December 31 of that year, Tharp notified Barton to vacate the premises. Barton declined to comply with the demand; and on the 1st day of January, 1930, Tharp filed this suit, seeking to recover possession of the premises by a mandatory writ of injunction. Omitting the formal parts and the description of the land, the application for the injunction is as follows:

"4. That during the summer of 1928 plaintiff rented said above described tract of land to the defendant R. A. Barton, for the year 1929, under the usual rental contract by which said Barton would occupy and cultivate said land for the year 1929 and pay to plaintiff as rent therefor one-third of all grain and one-fourth of all cotton and cottonseed grown on said land during the said year 1929; that by the terms of said rental contract, which was oral, the same covered and was limited to said year 1929, and the same expired and was up on December 31st, 1929, and the said R. A. Barton had no right to remain on said land and premises after said date; that the same was an express contract between said parties for the renting of above land for said year 1929, and ended with the close of said year.

"5. That during the spring of said year 1929 plaintiff notified said R. A. Barton that he would not renew said lease and that he would not rerent said land to him, Barton, after the expiration of the year 1929, and continuously thereafter during said year notified Barton that he would not renew said lease, and for him, Barton, to get him another place for the year 1930; that said Barton fully understood plaintiff's decision in that regard and fully acquiesced in the same and set about to get him another place and stated on several occasions that he was leaving plaintiff's farm after 1929; that plaintiff heard nothing to the contrary until on or about October 24th, 1929, when said R. A. Barton applied to plaintiff to rent said above described land for the year 1930; that plaintiff promptly declined to rent him said land, and told him on that occasion that he, plaintiff, would not rent to him and for him to get him another place.

"6. That afterwards, about December 1st, 1929, as plaintiff is informed, said R. A. Barton announced that he would not surrender possession of said land at the end of his term as above stated, that he did not intend to give possession of said land on Jany. 1st, 1930, that he intended to continue in possession of the same after said last named date and to hold, use, occupy and cultivate the same during the year 1930; that about December 1st, 1929, said Barton hired an attorney to aid and assist him in holding possession of said land after Jany. 1st, 1930, and during the year 1930; that about Dec. 1st, 1929, said attorney called upon this plaintiff and told that said

Barton had hired him for the purpose of aiding and assisting Barton in holding possession of said land after Jany. 1st, 1930, and during the year 1930; that said attorney then stated to plaintiff their plans for Barton holding possession of said land during the year 1930, saying that Barton was not going to move off on Jany. 1st, 1930, and would remain in possession of said land, that if plaintiff filed a suit of Forcible Detainer against Barton in the Justice Court in Rains County, where said land is situated, that Barton would have all the advantage as he lived there and plaintiff lived at Mineola, Texas, 17 or 18 miles away, that Barton and (the) Justice (of the) Peace there in that precinct were close friends, and that said Justice would be sure to decide in favor of Barton, or in case of a jury trial of the case that Barton would have the advantage as the jurors would be his neighbors and friends and would decide in his favor, that if Barton lost the case they would appeal the same to the County Court, that if he won plaintiff would have to appeal to said court and that such appeal could not reach said County Court in time for trial at the Jany. Term thereof which began on the first Monday in Jany., 1930, that the next term of said court opened on the first Monday in April, 1930, that Barton could and would make all necessary bonds to appeal said case, that by April, 1930, it would be too late for any one else to make a crop on said land for that year, that if plaintiff filed suit in the District Court for the possession of said land and sued out a writ of sequestration against said Barton that he, Barton, would promptly replevy the same by making the necessary bond and which he was able to do, and that such suit could not be heard before the spring term of the District Court of Rains County, which meets on the second Monday in May, 1930, and that it would then be too late for any one else to make a crop on said land during the year 1930, and Barton would have his crop planted and in spite of all plaintiff could do he would hold the place during 1930, and that was what they intended to do, etc."

The petitioner further alleged that in October, 1929, he rented the premises to one J. W. Liles for the year 1930 for a part of the crops to be grown thereon, and contracted to deliver possession to Liles on the 1st day of January, 1930; that he had notified the appellants of his contract with Liles, and had demanded possession of the premises in order that he might comply with that contract. He further stated that in the event he was unable to put Liles in possession at the time agreed on he would become liable to Liles for whatever damages the latter may sustain by reason of his failure to secure such possession. The petition concludes with a prayer for a writ of injunction restraining the defendants from continuing in the possession of the land and from using and occupying the same, thereby preventing plain-

tiff from delivering immediate possession to Liles, "and commanding said defendants to at once surrender possession of said land and vacate the same and give immediate possession thereof to the plaintiff and his tenant J. W. Liles, and that they be restrained and enjoined from in any way injuring," etc. "That defendants be cited to answer this petition, that plaintiff have judgment that said injunction be made perpetual, that plaintiff recover possession of said land and premises, for costs of suit, and for all such other and further relief, special and general, in law or in equity, that he may be justly entitled to." On the presentation of the petition the district judge in vacation granted the writ. On January 14 following, Barton and wife filed a verified answer, in which they presented a number of exceptions and demurrers, a general denial, and a special denial, alleging, in substance, that they had rented the premises from the petitioner for the year 1930, agreeing to pay therefor a part of the crops grown that year. The motion to dissolve was heard and overruled on January 27 upon the petition and answer alone; no other evidence of any kind was introduced. This appeal is by Barton and wife from the order of the judge in refusing to dissolve the preliminary writ of injunction.

■■ It has frequently been held that a judge in vacation has no authority to grant a preliminary writ of injunction unless that kind of relief is specially prayed for in the application. Boyd v. Dudgeon (Tex. Civ. App.) 192 S. W. 262; Hoskins v. Cauble (Tex. Civ. App.) 198 S. W. 629; City of Jacksonville v. Devereux (Tex. Civ. App.) 286 S. W. 572. The observance of that rule would seem to be all the more imperative where the preliminary writ sought is a mandatory injunction which, if issued, would materially alter the status of the parties towards the subject-matter of the suit. In this case it is doubtful, to say the least, whether the prayer for relief should be construed as seeking a preliminary writ; but since the judgment is to be reversed upon other grounds, that question need not be further considered.

The usual purpose for which courts of equity issue temporary injunctions is to preserve the status which exists at the time the writ is applied for, and thereby prevent one party from gaining an unfair advantage over the other. But in this case the purpose of the suit is to oust the defendants from the possession of a tract of land; and the legal effect of the preliminary writ issued was to accomplish that end immediately and without giving the parties in possession an opportunity to be heard. The use of an injunction for the purpose of transferring the possession of land from one person to another is a rather unusual remedy. To grant him such relief without giving the party in possession an opportunity to be heard is still more unusual. In High on Injunctions, vol. 1, § 2, the author says: "Mandatory injunctions are seldom allowed before a final hearing, although they may be granted on interlocutory applications. And while a court of equity is always reluctant to grant a mandatory injunction upon an interlocutory application and before a final hearing, it may yet do so in *extreme cases where the right is clearly* established and the invasion of the right results in serious injury."

To the same effect in Spelling on Injunctions, § 412: "Though the power of courts of equity extends to the issuance of interlocutory mandatory injunctions, it is exercised with great caution. Nothing but a case of an extreme hardship or equity will justify it. Equity will not interfere by mandatory injunction unless extreme or very serious damage, at least, will ensue from withholding that relief; and each case must depend on its own circumstances."

Again: "Mandatory injunction is rarely granted before final hearing, and will only be ordered to prevent extreme or very serious damage." Powhatan Coal & Coke Co. v. Ritz, 60 W. Va. 395, 56 S. E. 257, 259, 9 L. R. A. (N. S.) 1225. The same court quotes approvingly from Beach on Injunctions: "The legitimate purpose and function of a temporary or preliminary injunction is to preserve matters in status quo until a hearing; if it undertakes or if its effect is to dispose of the merits of a controversy without a hearing, or if it divests a party of his possession or rights in property without a trial, it is void. Thus, where a railway company had been in possession of a yard for making up its trains for more than 20 years, a temporary injunction which restrained it from preventing the occupation of the yard by a street railway company was held to be not merely illegal, but absolutely void. And an ex parte interlocutory injunction which deprives railroad directors of control may be more than irregular and wholly void as beyond the power of the court." Numerous cases are referred to in support of that text. In Calvert v. State, 34 Neb. 616, 52 N. W. 687, 692, one of the cases referred to in that opinion, it is said: "The question of the street railway's right to appropriate the property in question should have been determined by a trial before the order in question was made, and, as it was not so made, the judge acted without authority, and the order is void." In the case of Arnold v. Bright, 41 Mich. 207, 2 N. W. 16, 17, Judge Cooley said: "The court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property prima facie his, and hand over its enjoyment to another on an ex parte claim." Other decisions and text-writers expressing similar views are referred to in the Powhatan Coal Company Case, above cited.

The same doctrine is announced by the following Texas cases: Ort v. Bowden (Tex. Civ. App.) 148 S. W. 1145, and cases there referred to; City Council v. Ft. Worth (Tex. Civ. App.) 8 S.W.(2d) 730; Head v. Commissioners (Tex. Civ. App.) 14 S.W.(2d) 86; Ray v. City of Belton (Tex. Civ. App.) 162 S. W. 1015; Simms v. Reisner (Tex. Civ. App.) 134 S. W. 278, 280. In the last case referred to the court said: "The question of whether appellant had surrendered or forfeited his lease, if that question is raised by the evidence, is not one which can be properly decided on the application for a temporary injunction. Appellant was in possession of the land, claiming under his lease. He did not acquire this possession by force or fraud, and, so far as the evidence shows, appellees were never in actual possession of the property. An injunction is not a remedy which can be used for the purpose of recovering title or right of possession of property, and it is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except in cases in which the possession has been forcibly or fraudulently obtained by the defendant and the equities are such as to require that the possession thus wrongfully invaded be restored, and the original status of the property be preserved pending the decision of the issue of title."

The possession of real estate is prima facie evidence of a legal right to possession, and before the occupant should be disturbed the disturber must prove a better right. That right of possession and use is property and is within the protection of the due process provisions of the Federal Constitution. 5 Pomeroy, Equity Juris. § 264. The author above referred to has appended the following note which aptly expresses the proposition stated: "Possession is prima facie evidence of rightful title because it is one of the elements of title, and is sacred; and no court can in any form of proceeding take it from a man without a hearing without overthrowing the maxim that no man shall be condemned in person or deprived of property without a day in court and due process." According to the averments of the appellee's application for the writ, the appellants entered into the possession of the premises as tenants in a lawful manner under a rental contract. Their right to the continued possession was denied on the ground that their contract of tenancy had expired with the year 1929. The burden of proving the truth of that averment was on the plaintiff in the suit, the appellee in this appeal. The only proof he offered was his verified petition, and upon its presentation the mandatory writ was granted without notice to the appellants, requiring them to immediately vacate the premises. In short, they were summarily deprived of their possession of the property

without an opportunity to be heard upon their claim of right to the possession. The probability of injustice from that form of proceeding is too great to warrant its adoption without a hearing on the facts.

Our statute has provided remedies for dispossessing tenants who hold over without right. Proceeding by forcible entry and detainer authorized by title 84 of the Revised Civil Statutes furnished a speedy remedy. The landlord may also sue in the form of trespass to try title and, under certain conditions, secure a writ of sequestration for the purpose of dispossessing the tenant. In a case where the tenant pleads a leasehold interest in the property, it is no answer to say that the remedies above mentioned are inadequate to protect the owner of the property against all of the damages he may sustain in the event he ultimately establishes his right to possession. The right of a tenant to a hearing upon his claim is fundamental and cannot be ignored because of the grave consequences which may result to the owner in the event the tenant fails to sustain his claim. Nor does the fact that the writ granted is designed only as a temporary deprivation of the tenant's possession of the property alter the principle involved. The right of possession, if the tenant has any, is property, and he is entitled to its enjoyment and use every minute of the time covered by his rental contract. Courts therefore have no authority to deprive him of that right by transferring it to another for any appreciable length of time without giving the tenant an opportunity to support his claim by proof. In this case no fraud is charged against the tenant in obtaining possession. Neither is there any averment that he will injure or ill treat the premises, or will fail to cultivate them in the usual manner and at the end of the year pay the usual rents.

The error in granting the writ without a hearing might have been corrected in passing upon the motion to dissolve the writ. When that motion was presented, the tenants had filed an answer under oath denying insolvency and the averments of the plaintiff's petition, and further setting up a contract authorizing them to occupy the premises during the year 1930. That sworn answer was sufficient to put the appellee, as the complainant, on proof of the facts he had alleged; yet he offered none, relying solely upon his sworn petition. The pleadings presented a clean-cut issue as to the right to the possession of the premises for the year 1930. "It is a general rule that an injunction will not be granted where there is a dispute as to the legal right involved and the right of the complainant is doubtful; the theory being that it is the duty of the court to protect acknowledged rights rather than to establish new and doubtful ones. Therefore where the plaintiff's right has not been established by

law or is not clear but is questioned on every ground on which he puts it, not only by the answer of the defendant, but by the proof in the cause, he is not entitled to remedy by injunction. It is not enough that he is able to produce some evidence of his right when there is conflicting evidence that goes to the denial of all right. In a case so situated the plaintiff should first establish his right in an action at law and then come into chancery, if necessary, for the protection of the legally established right." 14 R. C. L. pp. 355, 356. Upon what ground can it be said that the appellee's sworn petition in this case was entitled to any more credence or weight than should be given to the sworn answer of the appellants? It is true, as said by some of our courts, the propriety of dissolving a temporary writ of injunction upon the filing of a sworn answer rests largely in the discretion of the judge who granted the writ; but that doctrine has been applied to cases where the purpose of the temporary writ issued was to preserve the existing status and to prevent one party from gaining an unfair advantage of the other with respect to the subject-matter of litigation. Here the situation is materially different. The writ alters the existing conditions; it takes property from one person and delivers it to another. When the motion to dissolve was overruled, that altered situation was prolonged until the final hearing of the case, which may not occur before the end of the term claimed by the tenants. It is not sufficient to say that the plaintiff in the suit had filed a bond and was able to respond in damages for all the injury which the tenants might sustain. If the tenants had a constitutional right to a hearing before they were dispossessed, the invasion of that right cannot be justified upon the ground that they may be compensated for their damages in money. They cannot in that manner be forced to exchange their right of possession to the rented premises for money paid as damages.

■ The verified averments of the appellee in his petition are not only met by the sworn denial of the appellants, but there is in the latter's favor the admitted fact that at the time they held possession which had been acquired in a lawful manner. Those facts present what appears to be a bona fide claim, giving rise to a disputed issue as to the legal rights of the parties which could not be fairly decided without a hearing of other evidence besides the pleadings. It has been held that when the evidence is evenly balanced the party having the burden must lose. Clark v. Hiles, 67 Tex. 141, 2 S. W. 356, 360. In the case cited the court said: "If it appears that the preponderance of testimony is not in favor of the party having the onus, the verdict should be against him."

Counsel for the appellee apparently rely upon the case of Hudspeth v. Gugenheim (Tex. Civ. App.) 278 S. W. 952, 954, in which a writ of error was denied by the Supreme Court. The facts of that case are in many respects similar to those involved in this controversy. There Gugenheim, the owner, applied for and secured a mandatory injunction, ousting Hudspeth, the tenant, from the possession of rented premises upon the ground that Hudspeth was holding possession without any contract. However, in the hearing on the motion to dissolve, the court went fully into the facts of the case. Judge Smith, who rendered the opinion in that case, states: "Upon the hearing of the motion to dissolve the parties went very fully into the whole transaction, eliciting evidence which covers 160 pages in the statement of facts. The evidence clearly negatives the claim of the Hudspeths of an express renewal of the lease of the premises in controversy. The evidence shows also that, relying upon the absence of the lease to the Hudspeths, Gugenheim leased the premises to another for a period of two years, and is now confronted with the alternative of placing the new lessee in possession, or of responding to him in damages sufficient to compensate him for whatever loss he may suffer by reason of the breach of that contract."

In concluding the opinion it is stated: "Under the case made we cannot say the trial judge has abused the discretion lodged in him." That case has probably gone further in allowing the use of a mandatory preliminary writ of injunction for the purpose of transferring the possession of property from one person to another than any other case in this state. However, we are not prepared to question its soundness, when confined to its particular facts. There, as stated by the court, a full hearing was had and there was no evidence whatever to sustain the claim of the tenant to the right of possession. Here there was no hearing other than the pleadings, which when considered did no more than present a case of doubtful right on the part of the tenant. The probability of injustice from that form of proceeding is so imminent that we do not feel inclined to extend the rule adopted in the case above referred to beyond the state of facts there shown by the record.

We are of the opinion that under the record before us the temporary writ was improperly issued and should have been dissolved upon the failure of the petitioner to present further evidence of his right to possession when the motion to dissolve was heard.

The order of the court overruling the motion to dissolve will therefore be reversed and set aside, and an order here entered dissolving the writ.

### On Motion for a Rehearing.

In a motion for rehearing, appellee complains that in dissolving the temporary writ

of injunction we have made a final disposition of this case. The judgment entered does not so provide; it simply dissolves the temporary writ heretofore issued and remands the case on its merits. It may be that upon a final hearing the relief prayed for should be granted.

The motion is overruled.