THE CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellants, v. THE IOWA CENTRAL RAILWAY COMPANY, Appellee, and THE IOWA CENTRAL RAILWAY COMPANY, Appellee, v. THE CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellant.

**Forcible entry and detainer.** Forcible entry and detainer·is not a landlord's only remedy for the protection of his possession and rights, but is additional to other remedies given him by the common law and the statutes. ·

**Railroads:** LEASE OF RIGHT OF WAY: TERMINATION: COLLATERAL AGREEMENT. The provisions of a contract in which one railway company leased to another a right of way for switching purposes, that the lessor could terminate the contract and purchase the track constructed upon the leased ground by the lessee, upon notice of its intention to do so, is held to be independent of another provision of the contract relating to switching of cars, and that the lease could be terminated by giving the notice provided therefor, independent of the provision for switching arrangements.

**Same:** RIGHTS OF LESSOR: INJUNCTION. Upon the lessee's refusal to allow the lease to be terminated by proper notice and reentry and to agree upon the value of its track as provided in the contract, wrongfully basing its refusal on a collateral switching provision, the lessor became entitled to possession of the leased premises and to have its rights protected by a proper action at law or in equity. And even though the lessor took forcible possession under such circumstances the lessees remedy would be forcible entry and detainer and not an action in injunction.

**Same:** TEMPORARY INJUNCTION: DISSOLUTION. Where the lessor, in an action by the lessee to restrain it from taking up its track on the leased premises, denied all allegations of the petition charging the taking of forcible possession of the premises, and no fraud was alleged, the temporary writ of injunction should have been dissolved.

**Same.** Courts will not undertake to change the possession of real property by means of a temporary injunction.

**Same:** NOTICE. A temporary writ of injunction which has the effect to stop the use of a switch track used in connection with shops and other buildings of a railway company should not issue without notice to defendant as provided by the statute.

**Forcible entry and detainer:** WHEN NOT AVAILABLE. · A lessor of premises in the peaceable and exclusive possession thereof after termination of the lease, can not maintain forcible entry and detainer to determine the rights of the parties therein.

**Injunctions:** DISSOLUTION: DISCRETION. The trial court has a large discretion in the matter of dissolving and refusing to dissolve a temporary injunction, and that discretion in the instant case is not interfered with.

*Appeal from Marshall District Court.*—HON. J. M. PARKER, Judge.

TUESDAY, JANUARY 19, 1909.

REHEARING DENIED WEDNESDAY, MAY 12, 1909.

THESE two actions involve the same subject-matter, and are submitted on the same briefs and arguments. They will be disposed of in one opinion. The first is a suit to enjoin the Iowa Central Railway Company from tearing up and relaying a railway track in the yards of that company at Marshalltown, and to restrain it from in any way interfering with plaintiff in the use, occupation, and enjoyment of a strip of ground and track in said yards or in relaying or restoring said track. The second is an action brought by the Iowa Central Railway Company to restrain the Chicago Great Western Railway Company from entering upon the premises described, and from in any manner interfering with plaintiff's use and enjoyment of the same. Temporary writs of injunction were issued in each case, and after answers were filed, motions to dissolve the temporary writs were filed in each and submitted to the trial court. In the first case the motion was sustained, and in the last it was overruled. The Chicago

Great Western Railway Company appeals from these orders.—*Affirmed.*

*George H. Carr* and *J. L. Carney*, for appellant.

*George W. Seevers, John I. Dille* and *Boardman & Lawrence*, for appellee.

Deemer, J.—In the disposition of the case we shall call the appellant the Chicago Company, and the appellee the Iowa Company.

On the 26th day of March, 1898, these two companies entered into an agreement in writing, from which we extract the following:

First.    The Iowa Company hereby grants to the Chicago Company the right to locate and construct and thereafter to maintain and operate single track of standard gauge upon and across the land of the Iowa Company in the city of Marshalltown, Iowa, from the easterly line of Third Street in an easterly and southeasterly direction across Glick's and Willigord's addition and Anson's subdivision to the westerly line of Third Avenue, as shown by the line A-B on the blue print hereto attached and made a part hereof. Said track shall be constructed on or before the first day of October, 1898, else this grant of the Iowa Company to the Chicago Company shall be void. Second. In case said Chicago Company constructs said track as aforesaid, the Iowa Company shall have the right to purchase said track from the Chicago Company, on giving at least sixty (60) days' written notice of its intention to purchase said track. It is mutually agreed that the price for said track shall be fixed by arbitration in the usual manner in the event that the parties hereto shall fail to agree upon the price. Third. Also in case said Chicago Company constructs said track as aforesaid, but not otherwise, the Chicago Company agrees to pay to the Iowa Company the sum of one hundred (100) dollars per annum as full payment for the rights herein granted and as rental for the land occupied by said track, to wit: A strip

twenty-five (25) feet wide, being twelve and one-half (12½) feet on each side of the center line of said track as it shall be located and constructed by said Chicago Company. Said rental shall begin upon the completion of said track and shall terminate sixty (60) days after the said Iowa Company gives notice to the Chicago Company of its intention to purchase said track. Fourth. The Iowa Company agrees that from and after the date of this agreement for a period of five years, the Iowa Company will upon request of the agent of the Chicago Company switch cars between the Chicago Company's transfer track and glucose works, so-called, at and for the sum of two ($2.00) dollars, per loaded car (empty cars free) and that the Iowa Company will handle the business of the Chicago Company expeditiously and carefully and in all respects the same as its own business. By switching the cars of the Chicago Company it is understood that the Iowa Company will take empty or loaded cars from the transfer track of the Chicago Company and place them conveniently for loading or unloading at the glucose works, and after such cars are unloaded or loaded, will take them from said works and place them on said transfer track. Fifth. It is further mutually agreed if the Chicago Company shall construct the track aforesaid and connect the same with the tracks of the glucose company, so-called, then and in that event the said switching charge of two (2) dollars per car shall cease, and the charge shall be only one dollar and twenty-five cents ($1.25) per car during the remainder of the period of five years for which this agreement is made for such cars as the Chicago Company shall request the Iowa Company to handle by its (the said Iowa Company's) engines. Sixth. In the event the Chicago Company shall construct said track and shall desire the said Iowa Company to switch cars for said Chicago Company then the Iowa Company shall have the right to use the said track, but such use shall be joint and not exclusive and shall not interfere with or be detrimental to the use of the same by the said Chicago Company.

In October of the year 1898 the Chicago Company entered upon said tract of ground and constructed a single track of railway thereon, which it used and occupied down

to about the time of the commencement of these suits in December of the year 1907, paying the rentals provided for in the contracts, save for the year ending June 1, 1908. It is admitted that about December 2, 1907, the Iowa Company entered upon the strip of ground described in the contract, tore up and removed a part of the railway track constructed thereon by the Chicago Company, and threatened to remove the remainder; but it claims that it had a right to do so, because it terminated the contract by reason of the abandonment of the premises by the Chicago Company, the failure of that company to keep its track in repair, and of its need of the property for the construction of shops, etc. It is shown that the shops of the Iowa Company at Marshalltown had been destroyed by fire, and that it entered upon the strip of ground and was engaged in the reconstruction thereof and was relaying tracks in its yards at the time this action was commenced. It further appears that the glucose works referred to in the contract had been abandoned, that a bridge over which the track constructed by the Chicago Company passed was out of repair and unsafe for traffic, and that something like one hundred feet of the rails had been removed, and that for the last three years the Chicago Company has had no use of the railway track. The cases as presented to us turn largely, if not wholly, upon the question of the forfeiture of the contract heretofore quoted, and to that proposition we shall first turn our attention.

The forfeiture, if there was one, resulted from certain correspondence between the officers of these companies, and it seems necessary to set this out in order that the controversy may be fully understood. The first letter was from the vice president of the Iowa Company to the general manager of the Chicago Company, and it reads as follows:

April 24, 1907. Mr. S. C. Stickney, Vice Pres. & Gen. Mgr., C. G. W. Ry., St. Paul, Minnesota—Dear Sir:

On March 26th, 1898, your company entered into a contract with the Iowa Central Railway Company covering the construction of certain tracks at the works of the glucose company at Marshalltown, Iowa. One of the conditions was to the effect that the Iowa Central Company should have the right to purchase this track from your company upon giving sixty days' written notice of its intention to do so, the value of such track to be fixed by arbitration in the usual manner, if the parties to the contract failed to agree upon it. We desire to give the required sixty days' notice, and to ask that you request your engineering department to agree with ours upon the value of the property to be taken. The track has been practically unused for some years, and our chief engineer advises us that it will require an expenditure of $1,124.40 to make necessary bridge and tie renewals. As you are probably aware, there is no longer business on this track that justifies its operation, but its location interferes with some changes we desire to make in our Marshalltown yard, and for that reason we wish to acquire the track as provided in the contract between our respective companies. I have requested our engineering department to take the matter up with yours, and I will be obliged if you will instruct your people to act as promptly as convenient in the matter, in order that our proposed changes may not be unnecessarily delayed. Yours truly, L. F. Day."

This was responded to by appellant's vice president as follows:

St. Paul, Minn., May 13, 1907. L. F. Day, Third Vice President—Dear Sir: Your favor of April 24th to Mr. S. C. Stickney, concerning track desired to be purchased by you at Marshalltown, has been turned over to us, and I have delayed it some time pending an opportunity to look the ground over. I have also gone over our contracts and I find if we should discontinue the use of the track in question, it would shut us out of the use of the tracks at the glucose works. Now, while we have no desire to interfere in any manner in the changes you desire to make in your yards at Marshalltown, yet I feel it is important to this company that some provisions be made

in the changes contemplated, for our engines to reach the glucose tracks, and if you are agreeable to this proposition and will submit a contract covering the terms of sale of the tracks in question, showing our right to continue operating the tracks at the glucose works, I will be glad to give it all possible haste on our part. Very truly yours, [Signed] L. S. Cass.

To this the representative of the Iowa Company answered in this wise:

May 14, 1907. Mr. L. S. Cass, Vice Pres. C. G. Ry., St. Paul, Minn.—Dear Sir: I am in receipt of your favor of the 13th instant relative to the track to the works of the glucose company at Marshalltown, Iowa, which was evidently written without a careful inspection of the contract under which this track was built. We do not believe it is either necessary or desirable to negotiate at this time a contract covering the interchange of switching by our respective companies at Marshalltown; and, of course, such a contract is entirely aside from the fulfillment of the agreement between our respective companies relative to the track in question. I am told, I do not know precisely upon what authority, that the glucose plant at Marshalltown has been sold to a wrecking company and will be removed, so that I doubt if either your company or our own is interested in rates of switching to and from this plant, which has not been operated for several years. However that may be, it has no connection with the contract under discussion, and I want to ask that your people handle this matter as promptly as possible, in order that we may not be unnecessarily and improperly embarrassed in making the changes which we contemplate in our tracks at Marshalltown. We will be very glad at any time the matter may be of interest to discuss with your people the question of switching charges at that point or any other, but on the other hand we do not want the possibility of such a discussion in any way to interfere with the clearly defined rights of our respective companies in the matter of this glucose track. I will appreciate it if you will, in accordance with my previous letter on the subject, have your engineering department agree with ours as to the

value of this material, at the earliest practicable date. Yours truly, L. F. Day.

The representative of the Chicago Company answered this by the following:

May 21, 1907. Mr. L. F. Day, Minneapolis, Minn. —Dear Sir: I beg to acknowledge receipt of your favor of May 14th. I do not care to have you work out the terms of a switching arrangement to the glucose works at this time, as it is not a switching arrangement that our company desires. The situation is simply this. We own a continuous line of railway from Marshalltown to the buildings of the glucose works. Now you want us to sell you a piece out of the center of our continuous line of railway, which we are willing to do, reserving to ourselves the right to operate a switching service, over the piece of track which we sell you, or if you prefer, it is satisfactory to us to perform this switching service with our own engines over some other track to be furnished by you equally advantageous to ourselves. Even though it be true that the present plant of the glucose company is to be torn down, there still remains a tract of ground suitable for some very large enterprise, and I have but little doubt but that at some future date an industrial proposition will be in operation on this property, which requires all the railways entering Marshalltown and which all the railways will desire to serve. We want to be entirely fair and have not the least desire to interfere with your track changes, but you of course can not expect us to sell you a chunk out of the center of our continuous railroad to this property without our providing ourselves with some other means of reaching this ground. I see no reason why it is not entirely consistent for us to agree upon some track which may be used by our engines for the same purpose our present track is, and if you will prepare such a contract, I will be very glad to give it prompt attention. Yours truly, L. S. Cass.

This was followed by a letter from the Iowa Company's representative as follows:

May 27, 1907. Mr. L. S. Cass, 3d V. P., C. G.

W. Ry., St. Paul, Minn.—Dear Sir: I am in receipt of your favor of the 21st inst., relative to what is known as the glucose track at Marshalltown. I do not want you to think that we are not interested in things that concern your company, but at the same time I would like to have you re-read my letter of the 14th instant and give me some specific advice as promptly as possible, relative to the valuation of this track, as provided in our contract. We want to be courteous and considerate at all times, and on the other hand we may reasonably expect that the terms of our contract will be carried out without further delay in any discussion of future possibilities. We hope that your engineer will meet with ours and that there will be no difficulty in arriving at any agreement as to the value of the material in question, but if you do not want to determine this matter, of course, we will proceed to arbitration, as provided in the agreement. It seems to me, however, that that should be unnecessary. I will appreciate it very much if you will instruct your engineering department to undertake to reach an agreement with ours as to the value of the track at the earliest possible date, in order that we may not be embarrassed by further delay. Yours truly, [Signed] L. F. Day.

Under date of April 27, 1907, the chief engineer of the Iowa Company wrote the chief engineer of the Chicago Company as follows:

Mr. W. H. Chadbourn, Chf. Engr., Chicago Great Western Ry., St. Paul, Minn.—Dear Sir: This company has recently taken up with yours the question of the acquisition of a track at Marshalltown, Iowa, known as the 'Glucose Track,' which is at present the joint property of the Iowa Central and the Chicago Great Western. Under the terms of the contract, the Iowa Central Company has the privilege of acquiring this track upon payment of its actual value at the time of its acquisition. I am prepared to have a representative of this department to go over the track with a representative of yours at any time in order to prepare a proper valuation of its actual value at this time. If you will give me three days' notice I will have my representative meet yours at Marshalltown. Yours truly, [Signed] H. G. Kelley, Chief Engineer.

This was responded to by the Chicago Company's engineers as follows:

May 10, 1907. Mr. H. G. Kelley, Minneapolis, Minn.—Dear Sir: I have yours of April 27th, regarding the acquisition by your company of the 'Glucose Track' at Marshalltown, but in the press of business it got buried among some papers. I now have the matter in hand, however, and I expect to be able to give you an answer in a few days. Yours truly, W. H. Chadbourn, Chief Engineer.

The last letter between these parties read in this wise:

Chicago Great Western Railway. Office of Chief Engineer. W. H. Chadbourn, Chief Engineer. St. Paul, Minn. May 29, 1907. Marshalltown Glucose Track. Mr. H. J. Kelley, Chief Engineer, M. & St. L. Ry., Minneapolis, Minn.—Dear Sir: Referring again to your letter of April 27th, File No. 4185, and my reply thereto dated May 10th: I am informed by our Third Vice President, Mr. Cass, that he has this subject up with your Mr. Day, and pending the negotiations between them no steps are to be taken by this department, as requested in your above mentioned. Yours truly, [Signed] W. H. Chadbourn, Chief Engineer.

Claiming that it had by these letters terminated the rights of the Chicago Company, and that that company had abandoned the track because the glucose plant had suspended its business, and had allowed the tracks to become out of repair, the Iowa Company, desiring to use the ground covered by the contract, resumed the use of the strip, laid tracks thereon for the purpose of getting to the shops it was then building in place of some which had been destroyed by fire, and located one wall of its building upon this strip of ground. Thus matters stood when this action was commenced. It was further shown, and is not denied, that no answer was made to Day's letter of May 26th, and that Day then went to Cass and had a personal inter-

view with him, and that in that interview Cass refused to agree upon a valuation of the Chicago Company's track, refused to submit that question to arbitration, and refused to comply with the terms of the contract as to sale. This was some time in the month of June, 1907. It does not appear that the Iowa Company has ever used or appropriated any of the Chicago Company's tracks; and the controversy is really over the right to use the strip of ground.

For appellant it is contended that the contract was never terminated, for the reasons: (a) that no notice was served as required thereby; (b) that no request was made for a valuation of the material after the sixty days had expired as required in the contract; and (c) because no arbitration was attempted or requested at any time or place. It is also argued that the remedy of the Iowa Company, if it had any, was forcible entry and detainer, and that, as the Iowa Company's answer in the first case was a plea in avoidance, the temporary writ should not have been dissolved. Again, it is insisted that, as the Iowa Company took forcible possession of the strip of ground, it has no standing in a court of equity, and the injunction should have been continued at least until final hearing. Error is assigned on the overruling of the motion in the last case, because plaintiff therein was a trespasser upon the property, had taken forcible possession thereof, and had no rights therein. It is contended that, whatever the rights of the Iowa Company under the contract, it had no right to maintain its action because it took forcible possession of the property covered thereby.

I. A reading of the contract between these two companies will show that it is either one of lease, or that it creates a license in the Chicago Company terminable upon sixty days' written notice by the Iowa Company of its intention to purchase the track to be constructed by the Chicago Company. De-

1. FORCIBLE ENTRY AND DETAINER.

termination of the question as to whether this contract was
a lease or created a license is not regarded as important,
for it is not true, as appellant contends, that. if it creates
a lease the only remedy of the Iowa Company was forcible
entry and detainer.    That matter is fully considered in
*Denecke v. Miller,* 142 Iowa, 486.   The summary remedy of
forcible entry and detainer granted to a landlord is not
exclusive, but cumulative to other remedies given him for
the protection of his possession and of his rights as they
exist at common law or under the statutes.

In our opinion, the term created by the lease, if there
was one, or the license, if that be the effect of the contract,
was terminated according to its terms by the written notices
contained in the correspondence quoted.   The
Iowa Company gave notice of its intention
to purchase the track constructed by the
Chicago Company, and attempt was made to
agree upon the price, which failed for some reason, and
there was then a sufficient demand by the Iowa Company
for an arbitration as provided in the contract.   But, how-
ever this may be, the lease or license was terminated by
the notice, and the right of the Chicago Company there-
after was to recover the price fixed for the track, either by
agreement or by arbitration.   After the expiration of the
sixty days from the giving of the notice, the Chicago Com-
pany had no further right of possession, and the Iowa
Company was within its rights in resuming the possession
of the strip of ground.   This it took, not by force, as
appellant contends, save as going upon and using the strip
would constitute force, but peaceably, as it had a right to
do.   It is true that the Chicago Company was insisting
upon some switching rights, or some arrangement with ref-
erence thereto, but this it had no right to do.

The switching privileges referred to in the contract
were collateral to the term created by the contract, and
were expressly limited to five years.   This period expired

in the year 1903, and the Iowa Company did not attempt to terminate the contract until the year 1907. It can not be true that the Chicago Company could delay the termination of the contract by refusing to agree upon the purchase price of the track, or to submit the matter to arbitration, or by insisting upon some arrangement for future switching. These were all independent and collateral to the termination of the contract. Possession of the strip of ground was not essential to the establishment of the Chicago Company's rights after the termination of the contract. When that event happened, the Iowa Company became bound under the contract to pay the price of the track, the amount thereof to be ascertained according to the terms of the contract. Future switching arrangements and charges were entirely collateral to the termination of the contract, and could be provided for by agreement or by action to enforce a common-law or statutory duty. The Chicago Company refused to agree upon the price to be paid for the track and refused to arbitrate, basing its refusal upon a right which was entirely collateral to anything contained in the contract. Having taken this position, the Iowa Company was entitled to the possession of the ground, and to enforce and protect that right by proper action at law or in equity. *Roehm v. Horst,* 178 U. S. 1 (20 Sup. Ct. 780, 44 L. Ed. 953); *Richmond v. Railroad,* 40 Iowa, 264. Even if the Iowa Company had taken possession of the property by force or stealth, the remedy of the Chicago Company under the peculiar facts here disclosed would be forcible· entry and detainer, and not an action for an injunction. In the former action the fact of possession alone is involved, while in the latter the plaintiff must show a right to the possession in order to establish a trespass. *Denecke v. Miller, supra.*

Moreover, in the case brought by the Chicago Company the Iowa Company filed an answer fully and specifi-

*3. SAME: rights of lessor: injunction.*

cally denying all the allegations of the petition, charging
that the Iowa Company had taken forcible
possession of the strip of ground in contro-
versy, and denying the possession thereof by
the Chicago Company. As no fraud was charged in the
petition, this in itself was sufficient for sustaining the mo-
tion to dissolve the injunction. *Shricker v. Field,* 9 Iowa,
366; *Stevens v. Myers,* 11 Iowa, 183; *Taylor v. Dickinson,*
15 Iowa, 483; *Russell v. Wilson,* 37 Iowa, 377; *Clark v.
American Coal Co.,* 86 Iowa, 451; *La Plant v. City of
Marshalltown,* 134 Iowa, 264; *Gossard v. Crosby,* 132
Iowa, 155.

4. SAME: temporary injunction: dissolution.

Courts will not undertake to change the possession of
real property by the issuance of a temporary writ of in-
junction, and where that has been done,
either intentionally or inadvertently, the tem-
porary writ will be dissolved on motion. *M. & St. L. R.
R. v. C., M. & St. P. R. R. Co.,* 116 Iowa, 681.

5. SAME.

II. Another reason why the temporary writ was
properly dissolved in the first case is that it was issued
without notice to the Iowa Company. Section 4359 of the
Code provides: "An injunction to stop the
general and ordinary business of a corpora-
tion, or the operations of a railway, or of a municipal cor-
poration, or the erection of any building or other work, or
the board of supervisors of any county, or to restrain a
nuisance, can only be granted upon reasonable notice of the
time and place of the application to the party to be en-
joined." The testimony shows that at the time the writ
was granted the Iowa Company was engaged in the opera-
tion of its road over the tracks in its yards at Marshall-
town, and was also engaged in the erection of its shops
and other buildings connected therewith. The temporary
writ had the effect of stopping this work, and should not
have been granted without notice. *Minneapolis & St.*

6. SAME: notice.

*Louis Ry. Co. v. Chicago, Milwaukee & St. Paul Ry. Co.,* 116 Iowa, 681.

III.   As to the appeal in the second·case.   It appears from the record that the Iowa Company was in the possession of the strip of ground in controversy, and as we think properly.   It does not appear that it took that possession by force of arms or to the disturbance of the public peace.   In other ·words, forcible possession .was not taken.   There was under the contract a right in either party to the use and possession of the property, and after its termination a right to the ·exclusive possession by the Iowa Company. When the contract was terminated, the Iowa Company had the right to re-enter, and, if it did so peaceably, it had the right to protect its possession so gained.   It might not, perhaps, protect a forcible possession or bottom any rights upon such a possession, but the record does not disclose any such procedure on the part of the Iowa Company as forfeits its rights to protect its possession.   If either party had the right to maintain an action of forcible entry, and detainer against the other, it was the Chicago Company against the Iowa one.   It did not choose to institute such an action, but·brought a suit in equity wherein it was re-quired to show its right to the possession.   The Iowa Company had no right, after having gained the possession, to bring an action of forcible entry and detainer.   See, as supporting these views:   *Mosseller v. Deaver,* 106 N. C. 494. (11 S. E. 529, 8 L. R. A. 537, 19 Am. St.. Rep. 540) ; *Huftalin v. Misner,* 70 Ill. 205 ; *Judy v. Citizens,* 101 Ind. 18.

We are not disposed on this appeal to interfere with the discretion lodged in the trial court in dissolving and in refusing to dissolve the injunctions issued in these cases.   That a large discretion is vested in the trial court in such matters is held by this court in *La Plant v. Marshalltown,* 134 Iowa,

7. FORCIBLE ENTRY AND DETAINER: when not available.

8. INJUNCTIONS: dissolution: discretion.

264, and many cases cited therein. Such rulings do not generally amount to a *res adjudicata*. They simply preserve a *status quo* until a final hearing on the merits.

No good reason appears for interfering with the rulings made by the trial court in either of these cases, and they are each and all *affirmed*.